IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A",<br><br>Defendants. | Case No. 25-cv-13836<br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT**

Plaintiff ▮▮▮▮▮▮▮▮ ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint for trademark infringement under the Lanham Act and false designation of origin against the Partnerships and Unincorporated Associations Identified in Schedule "A" ("Defendants"). In support hereof, Plaintiff, states as follows:

**I.    JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each Defendant directly targets business activities toward consumers in the United States, including Illinois, through their operation of or assistance in the operation of the fully interactive, commercial internet stores operating under the Defendant domain names and/or the Defendant Internet Stores identified in Schedule A. Specifically, each of the Defendants directly reaches out to do business with Illinois

1

residents by operating or assisting in the operation of one or more commercial, interactive e-commerce stores that sell products using counterfeit versions of Plaintiff's federally registered trademarks directly to Illinois consumers. In short, each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

II. **INTRODUCTION**

3. Plaintiff files this action to combat online infringers and counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of Plaintiff's federally registered trademarks ▮▮▮▮ ), ▮▮▮▮ ), ▮▮▮▮ ), and ▮▮▮▮ ) (collectively, the "▮▮▮▮ Trademarks"). See **Exhibit 1**. The Defendants created internet stores (the "Defendant Internet Stores" or the "Stores") by the dozens and designed them to appear to be selling genuine ▮▮▮▮ branded products when in fact the Stores are selling counterfeit versions to unknowing customers for subsequent sale infringing and counterfeiting products to unknowing consumers.

4. The Defendant Internet Stores share unique identifiers, such as similar design elements of the counterfeit products offered for sale and, on information and belief, these similarities suggest that the Defendant Internet Stores share common manufacturing sources, thus establishing that the Defendants' counterfeiting and infringing operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants have gone to great lengths to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their Stores multiple times,

2

opening new Stores, helping their friends open Stores, and making subtle changes to their products. Plaintiff has been forced to file this action to combat Defendants' willful infringement of Plaintiff's registered trademarks, as well as to protect unknowing consumers from purchasing counterfeit products over the Internet. Because of Defendants' actions, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks. Accordingly, Plaintiff seeks injunctive and monetary relief.

### III. PARTIES

**Plaintiff ▮▮▮▮▮▮▮▮.**

5. Plaintiff is a ▮▮▮▮▮▮▮▮ and is the creator and seller of high-quality ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, as well as a range of accessories such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ("▮▮▮▮▮▮ Products"). ("▮▮▮▮▮▮ Products"). The ▮▮▮▮▮▮ equipment was designed to provide consumers with an enhanced ▮▮▮▮▮▮▮▮ experience. Plaintiff sells these designs through its ▮▮▮▮▮▮ brand, which allows consumers to purchase genuine products through the company's website. The ▮▮▮▮▮▮ Products have become enormously popular and even iconic, driven by Plaintiff's exacting quality standards and innovative designs. Among the purchasing public, genuine ▮▮▮▮▮▮ Products are instantly recognizable as such in the United States and around the world.

6. Plaintiff launched its ▮▮▮▮▮▮ branded products in ▮▮▮ following an official company name change from ▮▮▮▮▮▮ which reflected its global growth, that, for example, can

be viewed and purchased through the company's website storefront[1]. Founded in ███████████, the Company evolved into a world-renowned ███████████ and expanding through acquisitions and innovation. Today, with over 3,400 employees and global operations, ███████ produces a wide range of ███████████████████████████████. Plaintiff has introduced several products under the ███████ brand through its e-commerce marketplaces. Plaintiff's unique products have been advertised with its federally registered trademarks for several years. Plaintiff continues to heavily advertise its unique products on all its e-commerce marketplaces, social media, advertisements, and product demonstration videos to educate consumers on both its products and trademarked name. Its online marketplaces and social media feature original content, reviews, and testimonials for ███████ Products.

7. Plaintiff is the manufacturer, distributor, and retailer of ███████ Products. The Company is engaged in the business of distributing and retailing its ███████████ products within the Northern District of Illinois under the federally registered ███████ Trademarks. Defendants' sales of the counterfeit products in violation of Plaintiff's intellectual property rights are irreparably damaging the Plaintiff.

8. Plaintiff has registered the trademarks ███████████████████████████████████████████████████████████████████████ Trademarks") with the United States Patent and Trademark Office. The ███████ Trademarks are incontestable pursuant to 15 U.S.C. § 1065.

---

████████████

4

Prior to registrations, the Company continuously used ▓▓▓ , ▓▓▓▓▓▓ ▓▓▓▓▓▓ -as the trademarks for its products beginning with their introduction . The ▓▓▓▓▓ Trademarks are distinctive and identify the merchandise as goods originating from the Plaintiff. The registrations for the ▓▓▓▓▓ Trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the ▓▓▓▓▓ Trademarks pursuant to 15 U.S.C. § 1057(b). The ▓▓▓▓▓ Trademarks have been continuously used and have never been abandoned since their first use.

9. Plaintiff uses the ▓▓▓▓▓ Trademarks to identify its goods. The trademarks are distinctive when applied to Plaintiff's goods, signaling to the purchaser and consumer that the products are from Plaintiff and are made and manufactured to Plaintiff's original specifications and standards.

10. Since its initial launch of the original ▓▓▓▓▓ branded products and as of its first use of the ▓▓▓▓▓ Trademarks, Plaintiff's trademarks have been the subject of substantial and continuous marketing and promotion by Plaintiff throughout the United States and, due to its strong internet presence, throughout the entire world. Plaintiff has and continues to widely promote and market its trademarks to the general public, including through its official website storefront. Genuine and authentic ▓▓▓▓▓ branded products are offered and sold by Plaintiff directly through its website and authorized storefronts.

11. Plaintiff has expended substantial time, money, and other resources to develop, advertise, and otherwise promote the ▓▓▓▓▓ Trademarks and brand. As a result, consumers recognize that products bearing the distinctive ▓▓▓▓▓ Trademarks originate exclusively from Plaintiff.

5

**Defendants**

12. Defendants are individuals and entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the state of Illinois and in this Judicial District, through the operation of fully interactive commercial websites and online commercial marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell infringing products to consumers within the United States, including Illinois and in this Judicial District.

13. Defendants are an interrelated group of infringers and counterfeiters who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine ▆▆ ▆▆▆▆ Products, while they actually sell inferior imitations of Plaintiff's ▆▆▆▆ Products. The Defendant Internet Stores share unique identifiers, such as common design elements, the same or similar counterfeit products that they offer for sale, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, and identically or similarly priced counterfeit products. As such, the Defendant Internet Stores establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same transaction or occurrence. The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

IV. **DEFENDANTS' UNLAWFUL CONDUCT**

14. The success of Plaintiff's brand has resulted in significant infringement and counterfeiting. Consequently, Plaintiff has identified numerous marketplace listings on e-commerce platforms such as, but not limited to, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, that include the Defendant Aliases and which have been offering for sale, completing sales, and exporting illegal products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating Defendant Aliases. E-commerce sales, including e-commerce internet stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* **Exhibit 2**, U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*. According to Customs and Border Patrol's ("CBP") report, from Fiscal Year (FY) 2020 to FY 2024, the total number of goods seized for IPR violations has more than doubled. In addition to seizure, CBP executed 99,959 alternative enforcement actions, such as abandonment and destruction. *Id.* China and Hong Kong are consistently the top two for IPR seizures. In FY 2024, seizures from China and Hong Kong accounted for approximately 90% of the total quantity seized. *Id.* The vast majority of IPR seizures continue to take place within the express consignment and mail shipping methods. In FY 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments. *Id.* Counterfeit and pirated products account for billions of dollars in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

15. Groups of counterfeiters, such as Defendants here, are typically in communication with each other. They regularly participate in QQ.com chat rooms and communicate through

7

websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

16. Counterfeiting rings take advantage of the anonymity provided by the internet, which allows them to evade enforcement efforts to combat counterfeiting. For example, counterfeiters take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." *See* **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 41 Nw. J. Int'l. L. & Bus. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendants may and do garner sales from Illinois residents by setting up and operating e-commerce internet stores that target United States consumers using one or more aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, have sold counterfeit products to residents of Illinois.

17. Upon information and belief, at all relevant times hereto, the Defendants in this action have had full knowledge of Plaintiff's ownership of the ▇▇▇▇▇▇ Trademarks, including its exclusive right to use and license such intellectual property and its associated goodwill.

18. Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant domain names often use privacy services that conceal the owners' identities and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A of this

8

Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, to make their sales and revenue appear to be below reporting thresholds,[2] and to avoid being shut down.

19. The infringing products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the infringing products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

20. Upon information and belief, Defendants deceive unknowing customers by using the ▮▮▮▮▮▮▮ Trademarks without authorization within the content, text, and/or metatags of their websites and marketplace storefronts to attract various search engines on the internet looking for websites relevant to consumer searches for Plaintiff's ▮▮▮▮▮▮▮ branded products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization tactics and social media spamming so that the Defendants Internet Stores listings show up at or near the top of relevant search results after others are shut down. As such, Plaintiff also seeks to disable domain names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit products.

21. Defendants' use of the ▮▮▮▮▮▮▮ Trademarks on or in connection with the advertising, marketing, distribution, offering for sale, and sale of counterfeit products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

---

[2] As of 2024, the INFORM Consumers Act requires e-commerce marketplaces to collect and disclose certain identity data of high-volume sellers (i.e., those that make 200 or more sales in a 12-month period and have $5,000 or more in gross revenues). 15. U.S.C. § 45f.

22. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the ▇▇▇▇ Trademarks in connection with the advertisement, offer for sale, and sale of the counterfeit products, through, *inter alia*, the internet. The counterfeit products are not ▇▇▇▇ branded products of the Plaintiff. Plaintiff did not manufacture, inspect, or package the infringing products and did not approve the infringing products for sale or distribution. Each of the Defendants' Internet Stores offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold counterfeit products into the United States, including Illinois.

23. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling counterfeit products that infringe upon the ▇▇▇▇ Trademarks unless preliminarily and permanently enjoined.

## COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

24. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 23.

25. This case concerns a trademark infringement and counterfeiting action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered ▇▇▇▇ Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The ▇▇▇▇ Trademarks are distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products bearing the ▇▇▇▇ Trademarks.

26. Defendants have and continue to sell, market, distribute, and advertise products bearing the ▇▇▇▇ Trademarks without Plaintiff's permission.

27. Plaintiff is the exclusive owner of Plaintiff's trademarks. Plaintiff's U.S. registrations for the ▮▮▮▮▮▮ Trademarks are in full force and effect. *See* **Exhibit 1**. Upon information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's trademarks and are willfully and intentionally offering counterfeit items bearing Plaintiff's trademarks. Defendants' willful, intentional, and unauthorized use of Plaintiff's trademarks is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general consuming public.

28. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

29. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademarks.

30. The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiff's ▮▮▮▮▮▮ branded products.

## COUNT II

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

31. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30.

32. Defendant's advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in counterfeit versions of Plaintiff's products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of such products.

33. By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendants have offered and shipped goods in interstate commerce.

34. Likewise, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendants have and continue to trade on the extensive goodwill of Plaintiff to induce customers to purchase a counterfeit version of Plaintiff's products, thereby directly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its lengthy nationwide marketing, advertising, sales, and cumulative consumer recognition.

35. Defendants knew or, by the exercise of reasonable care, should have known that their past, current, and continuing advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the counterfeit goods has and will continue to cause confusion and mistake or to deceive purchasers, users, and the public.

36. In addition, by using Plaintiff's trademarks in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of the fact as to the origin and sponsorship of the counterfeit product.

37. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit product to the public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

38. As a direct and proximate result of Defendants' wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its genuine products.

39. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. That Defendants, their affiliates, officers, agents, employees, attorneys, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   i. using Plaintiff's trademarks in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with Plaintiff's trademarks;

   ii. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's trademarks and associated with or derived from Plaintiff's trademarks;

   iii. making, using, selling, and/or importing to the United States for retail sale or resale any products that infringe Plaintiff's trademarks;

   iv. committing any acts calculated to cause consumers to believe that Defendants' counterfeit products are sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs and marketing text in connection with the offer or sale of counterfeit products;

      v.    further infringing Plaintiff's trademarks and damaging Plaintiff's goodwill;

      vi.    otherwise competing unfairly with Plaintiff in any manner;

      vii.    shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff's trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

      viii.    using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is how Defendants could continue to sell counterfeit products;

      ix.    operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendants that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's trademarks or reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's trademarks; and,

      x.    registering any additional domain names that use or incorporate any portion of the Plaintiff's trademarks; and,

B.    That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      i.    displaying images protected by the Plaintiff's trademarks in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the Plaintiff's trademarks; and

      ii.    shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale, and protected by the Plaintiff's trademarks or any reproductions, counterfeit copies, or colorable imitation thereof; and,

C.    That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with any and all injunctive relief ordered by this Court;

D.    Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: Alibaba, AliExpress, eBay, and Temu; payment processors such as: PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, Instagram, Snapchat, TikTok, YouTube, LinkedIn, Twitter; Internet search engines such as: Google, Bing, and Yahoo; webhosts for the Defendants Domain Names; and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of counterfeit products using the Plaintiff's trademarks; shall:

      i. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit Plaintiff's ▆▆▆▆ branded product using Plaintiff's trademarks, including any accounts associated with the Defendants listed on Schedule A;

      ii. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeiting and infringing counterfeit product using Plaintiff's trademarks; and,

      iii. take all steps necessary to prevent links to the Defendant Online Stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online stores from any search index; and,

E. That each Defendant account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F. For Judgment in favor of Plaintiff against Defendants that they have: (a) willfully infringed Plaintiff's rights in its federally registered trademarks pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

G. In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's trademarks;

H. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

I. That Plaintiff be awarded any and all other relief that this Court deems equitable and just. Plaintiff demands trial by jury as to all causes of action so triable.

Dated: November 11, 2025        Respectfully submitted,

                   <u>/s/ James E. Judge</u>

                   Zareefa B. Flener (IL Bar No. 6281397)
                   James E. Judge (IL Bar No. 6243206)
                   Ying Chen (IL Bar No. 6346961)
                   Flener IP Law, LLC
                   77 West Washington Street, Suite 800
                   Chicago, Illinois 60602
                   (312) 724-8874
                   jjudge@fleneriplaw.com